**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-61268-STRAUSS**

**ANDY EVANS,**

       Plaintiff,

v.

**AUDI OF AMERICA, INC.,**

       Defendant.

_____/

## ORDER DISMISSING ACTION WITHOUT PREJUDICE[1]

THIS MATTER came before the Court upon Defendant Audi of America, Inc.'s Motion to Dismiss Fourth Amended Complaint ("Motion") [DE 84].  I have reviewed and considered the Motion, Plaintiff's Response thereto [DE 85], Plaintiff's Fourth Amended Complaint [DE 82], and all other pertinent portions of the record.  For the reasons discussed herein, this action will be dismissed without prejudice for lack of subject matter jurisdiction.

This action stems from alleged defects with a 2015 Audi A3 vehicle that Plaintiff purchased in June 2022 from CarMax Superstores, Inc. ("CarMax").  Plaintiff filed his initial Complaint [DE 1] in this action on June 23, 2025, asserting claims against Audi of America, Inc. ("Audi").  Although Plaintiff has since paid the filing fee, he sought leave to proceed *in forma pauperis* at the time he filed his initial Complaint.  Therefore, I screened the initial Complaint in accordance

---

[1] This case was randomly assigned to me in accordance with Administrative Order 2025-11, and the parties have consented to me conducting any and all further proceedings in this case and ordering the entry of judgment [DE 70].  *See* 28 U.S.C. § 636(c)(1) ("Upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ."); Fed. R. Civ. P. 73(a) ("When authorized under 28 U.S.C. § 636(c), a magistrate judge may, if all parties consent, conduct a civil action or proceeding . . . .").

with 28 U.S.C. § 1915(e).  Upon screening the Complaint, I determined that it was subject to dismissal for multiple independent reasons.  Consequently, I entered an Order [DE 7], on June 27, 2025, providing Plaintiff with an opportunity to file an amended complaint to attempt to rectify the deficiencies with his Complaint.

On August 18, 2025, Plaintiff filed his First Amended Complaint [DE 12], asserting claims against Audi and two additional defendants, CarMax and Volkswagen Group of America, Inc. ("Volkswagen").    Plaintiff's  First  Amended  Complaint,  however,  remained  deficient. Nevertheless, I provided Plaintiff with an opportunity to file a further amended complaint.  *See* [DE 19].  Plaintiff subsequently filed a Second Amended Complaint [DE 21], Third Amended Complaint [DE 29], and Corrected Third Amended Complaint [DE 30, 47].    Thereafter, Defendants were served, appeared, and filed motions to dismiss [DE 52, 57].  In addition to arguing that Plaintiff failed to state a claim, Audi and Volkswagen argued that Plaintiff failed to establish that the amount in controversy exceeds $75,000, [DE 57] at 7, which is necessary to invoke diversity jurisdiction.  *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . .").

On January 5, 2026, I held a hearing on the motions to dismiss, ultimately granting the motions to dismiss and dismissing Plaintiff's Corrected Third Amended Complaint without prejudice, but with leave to amend, for the reasons stated on the record at the hearing (which was digitally recorded).  *See* [DE 80, 81].  I spent most of the 45-minute hearing providing a detailed oral ruling, explaining several ways in which Plaintiff's operative complaint at the time (the Corrected Third Amended Complaint) remained deficient.  I did so because I decided to give Plaintiff one final opportunity to further amend his complaint, and I wanted Plaintiff, who is *pro*

*se*, to have the benefit of an in-person explanation regarding the issues he needed to rectify in a further amended complaint.  I addressed issues that needed to be rectified with both subject matter jurisdiction and Plaintiff's substantive claims.  The oral ruling I explained at the hearing provides important context for this Order.

In his Corrected Third Amended Complaint, Plaintiff included five counts, bringing claims for breach of contract, fraudulent misrepresentation and concealment, negligent misrepresentation, a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and promissory estoppel.  He alleged that his total damages exceeded $75,000 and included $12,543.37 in direct repair costs, more than $25,000 for diminished value due to unresolved defects and recalls, more than $18,000 in loss of use damages based on reasonable rental car rates, more than $10,000 for incidental and consequential damages, and punitive damages.  [DE 47] at 7.

At the outset of the hearing, I informed Plaintiff that his complaint would be dismissed without prejudice and that I would give him one more chance to amend his complaint.  I told Plaintiff he should take notes and listen carefully because it would be his last opportunity to correct deficiencies with his complaint.

On the issue of subject matter jurisdiction, I explained that Audi and Volkswagen raised an issue regarding the amount in controversy, and that regardless, the Court is obligated to ensure it has jurisdiction.  After all, "[f]ederal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.* (internal citation omitted).  "[E]ven if the litigants do not question the court's jurisdiction, the court must inquire into its jurisdictional basis *sua sponte*."  *Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1401 (11th Cir. 2000) (citing *University of S. Ala. v.*

*American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)).  "[A] federal court has an independent

obligation to review its authority to hear a case before it proceeds to the merits."  *Id.* at 1400-01.

After noting – at the January 5, 2026 hearing – the Court's independent obligation to ensure

subject matter jurisdiction, I addressed the standard that applies when a court considers whether

the amount in controversy requirement is satisfied.  Specifically, I noted that Plaintiff was correct

that it must appear to a legal certainty that the claims in the case are really for less than the

jurisdictional amount, at least where Plaintiff pled specific damages amounts.  In this regard, the

Eleventh Circuit has explained:

> Ordinarily, a plaintiff need only plead an amount sufficient to satisfy the amount-in-controversy requirement in good faith. The plaintiff's good-faith pleading will be second guessed only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount. However, when the plaintiff pleads an unspecified amount of damages, it bears the burden of proving by a preponderance of the evidence that the claim on which jurisdiction is based exceeds the jurisdictional minimum. This additional requirement is warranted because there is simply no estimate of damages to which a court may defer.

*Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) (cleaned up) (internal

citations omitted).  Nevertheless, the "liberal standard for jurisdictional pleading is not a license

for conjecture."  *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000).  "In light

of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal

courts are obligated to strictly construe the statutory grant of diversity jurisdiction, or as the

Supreme Court has put it, to 'scrupulously confine their own jurisdiction to the precise limits which

the statute has defined.'"  *Id.* (quoting *Snyder v. Harris*, 394 U.S. 332, 340 (1969)).

After addressing the legal standard, I made clear to the parties that whether the amount in

controversy requirement is satisfied would be an issue in the case when Plaintiff amended his

complaint and that more would need to be done to address the issue.  I then proceeded to address

various issues pertaining to the damages that Plaintiff had alleged in his Corrected Third Amended Complaint.

First, as an overarching matter, I explained that I could not ignore the fact that Plaintiff – by claiming an amount in controversy exceeding $75,000 – was seemingly attempting to recover substantially more than he would have paid to purchase the vehicle.  Although Plaintiff did not allege the purchase price, he did allege that the subject vehicle is a 2015 Audi A3 that he purchased from CarMax in Las Vegas in June 2022.  [DE 47] at 3.  I observed that the purchase price for a 7-year-old Audi A3 was likely around $20,000.  I recognized that the purchase price alone did not mean that Plaintiff could not have $75,000 in damages, particularly if a defect led to personal injury – though Plaintiff has not alleged personal injury.  *Based on the factual allegations* of the Corrected Third Amended Complaint, I stated it was unclear how Plaintiff's damages could exceed the purchase price, particularly by such a large amount, such that Plaintiff could ever recover $75,000 in damages if he prevailed on his claims.  I observed – based on an unpublished Eleventh Circuit case I found to be persuasive – that for Plaintiff to even recover damages equal to the purchase price, the vehicle would likely need to have no value.  *See Thomas v. Generac Power Sys. Inc.*, No. 21-12997, 2022 WL 4091735, at *2 (11th Cir. Sept. 7, 2022) ("If a product has no value, the actual damages consist of the purchase price.").

Second, I explained it was unclear how Plaintiff could recover the $12,543.37 alleged for direct repair costs.  That figure is based on an estimate for repairs that Audi provided to Plaintiff (a copy is attached as an exhibit to Plaintiff's complaints).  The Corrected Third Amended Complaint did not indicate that Plaintiff made any repairs or paid for any repairs.  In fact, Plaintiff alleged that the vehicle remains unsafe and that the defects are unresolved.  *See* [DE 47] at 3, 7.  Relying again on *Thomas*, I found it unclear how Plaintiff could recover the alleged direct repair

5

costs when he never paid for any repairs. *See Thomas*, 2022 WL 4091735, at \*3 ("Some of Mr. Thomas' claimed FDUTPA damages are not available to a legal certainty. First, Mr. Thomas cannot claim damages for the $2,500 estimate to professionally install the generator when he concedes he never paid to have it installed.").

Third, I similarly noted that – even assuming Plaintiff could recover loss of use damages as a general matter – Plaintiff would not be able to recover loss of use damages for a rental car or substitute transportation if he did not spend any money on a rental car or substitute transportation. I observed that Plaintiff did not allege that he actually rented a car or that he otherwise incurred any costs to procure substitute transportation. Ultimately, I told Plaintiff that if he was seeking loss of use damages, he would need to include more specific allegations regarding how such damages come into play.

Fourth, I observed that if Plaintiff could recover the alleged direct repair costs ($12,543.37), I did not see how he could then recover damages for diminished value. Based on Plaintiff's factual allegations, it appeared that completing the repairs set forth in Audi's estimate would resolve any diminished value. Moreover, I observed that the amount Plaintiff sought for diminished value ($25,000) likely exceeded the purchase price of the vehicle, which made it appear to a legal certainty that Plaintiff could not recover that amount.

Fifth, I briefly noted issues with other alleged damages. For instance, I observed that Plaintiff alleged unknown and indeterminate incidental and consequential damages and that it was unclear what such alleged damages were based on and how such damages had been adequately alleged. Additionally, again pointing to *Thomas*, I explained that consequential damages are not available for certain claims such as Plaintiff's FDUTPA claim. *See Thomas*, 2022 WL 4091735,

at *2-3 ("Under the FDUTPA, a successful plaintiff is entitled to actual damages . . . . A plaintiff may not recover consequential damages under the FDUTPA." (internal citations omitted)).

Sixth, I addressed Plaintiff's request for punitive damages, noting that punitive damages are not available for certain of Plaintiff's claims, such as his FDUTPA claim.  *See id.* at *3 ("[P]unitive damages are not available under the FDUTPA.").  While I recognized punitive damages may be available for fraud, I observed that any contention that punitive damages here could allow Plaintiff to reach the jurisdictional minimum was indeterminate and speculative at best.  *See Roberts/Heywood Prop. v. Rayonier Forest Res., LP*, No. 24-12284, 2025 WL 1355824, at *3 (11th Cir. May 9, 2025) ("Roberts's suggestion that punitive damages could bridge the gap between the $40,000 damages amount (plus concrete marker replacement) and the $75,000 jurisdictional threshold remains 'indeterminate and speculative,' and therefore insufficient to preclude dismissal for lack of subject-matter jurisdiction.").  Even if recoverable, I explained that it was difficult to see how Plaintiff could recover enough in punitive damages to possibly reach the jurisdictional threshold if Plaintiff only had actual damages of $12,000 or even $20,000.  And I pointed to the court's reminder in *Thomas* that, "[a]s a constitutional matter, the Supreme Court has held that 'courts must ensure that the measure of punitive damages is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.'" *Thomas*, 2022 WL 4091735, at *2 n.2 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003)) (alteration adopted).

Ultimately, I found that it appeared to a legal certainty that the allegations in Plaintiff's Corrected Third Amended Complaint were insufficient to show that Plaintiff could recover $75,000 in damages.  But I reiterated that Plaintiff would have an additional chance to amend.

Importantly, though, I emphasized that Plaintiff would need to include more specific allegations in his amended complaint to show that the amount in controversy requirement is met.

That brings us to Plaintiff's Fourth Amended Complaint [DE 82], which Plaintiff filed on January 26, 2026.  The Fourth Amended Complaint differs from Plaintiff's prior complaint in at least three significant ways.  First, Audi is the sole Defendant; CarMax and Volkswagen are no longer named as defendants.  Second, Plaintiff no longer asserts a breach of contract claim.  The Fourth Amended Complaint contains three counts: (I) Fraudulent and/or Negligent Misrepresentation; (II) Promissory Estoppel; and (III) FDUTPA.  Third, the Fourth Amended Complaint crystallizes, to at least some extent, the alleged factual basis for Audi's liability.

Although Plaintiff does include some additional factual allegations in the Fourth Amended Complaint (for example, alleging with greater particularity the statements on which his fraud claim is based), he has failed to include more specific allegations showing that the amount in controversy requirement is met, which I directed him to do at the January 5, 2026 hearing.  In fact, rather than crystallizing the allegations regarding the damages he alleges he may be entitled to recover in this matter, Plaintiff includes even less detail regarding his alleged damages and what he believes he could potentially recover if he prevails in this action.

As indicated above, Plaintiff previously provided specific amounts for certain alleged categories of damages.  However, Plaintiff's Fourth Amended Complaint no longer provides any specific estimates of any damages, notwithstanding the fact that I told Plaintiff he needed to include more specific allegations regarding his alleged damages.  Now, Plaintiff merely alleges generally that the amount in controversy exceeds $75,000, that he has suffered compensatory damages, consequential damages, and loss of use damages, and that punitive damages are also warranted due to Audi's knowing misrepresentations and bad faith conduct.  *See* [DE 82] at 2, 12.  The only

specific figure Plaintiff's Fourth Amended Complaint mentions is the $12,543.37 repair estimate, alleging that:

> The amount-in-controversy inquiry is not limited to an automotive repair estimate, and the jurisdictional analysis does not turn on the dealership's quoted cost to fix the car.  Defendant's focus on the approximate $12,543.37 estimate improperly narrows the inquiry and ignores the categories of damages pleaded, including loss-of-use, consequential damages, and punitive damages for knowing and deceptive conduct.

[DE 82] at 3; *see also id.* at 6 (noting that Audi North Miami issued a written repair estimate for $12,543.37).

Aside from the $12,543.37 figure, Plaintiff does not allege any other damages amounts or estimates to which the Court could defer.  Given that Plaintiff has not done so despite my explicit directions at the January 5, 2026 hearing, Plaintiff's general allegation that the amount in controversy exceeds $75,000 does not appear to be made in good faith.  Plaintiff's failure to provide any factual allegations regarding his alleged consequential damages is particularly problematic.  Not only did I explicitly direct him to do so, but Rule 9(g) mandates that "[i]f an item of special damage is claimed, it must be specifically stated."  Fed. R. Civ. P. 9(g).  "[B]ecause consequential damages are special damages, Plaintiff was required to plead them with specificity in the complaint."  *Safe Structure Designs, LLC v. Bullock*, No. 3:24-CV-1008-MMH-MCR, 2025 WL 4658463, at *1 (M.D. Fla. Apr. 10, 2025) (citing *Kingshill Hosp., Inc. v. Am. Econ. Ins. Co.*, No. 5:18-cv-520-Oc-30PRL, 2018 WL 6427681, at *2 (M.D. Fla. Dec. 5, 2018)).

Additionally, as also noted above, the alleged factual basis for Plaintiff's claims is somewhat clearer in the Fourth Amended Complaint than in the Corrected Third Amended Complaint.  Previously, it was somewhat unclear whether Plaintiff's claims were solely premised upon Audi's alleged refusal to perform the repairs listed on Audi's $12,543.37 repair estimate, or whether Plaintiff's claims also alleged liability dating back to his June 2022 purchase of the vehicle

9

from CarMax.  While the counts in Plaintiff's Corrected Third Amended Complaint focused on Audi's alleged refusal to perform the repairs listed on the estimate or repair order, it also named CarMax as a defendant and potentially attempted to allege liability dating back to Plaintiff's June 2022 purchase of the vehicle.  *See, e.g.*, [DE 47] at 3 ("The vehicle was sold with representations of fitness and safety.").

However, it is now clear that Plaintiff's claims are premised upon Audi's alleged failure to perform the estimated $12,543.37 in repairs that Audi allegedly promised to undertake.[2] Specifically, Plaintiff's claims are premised upon Audi's alleged representation or promise that if Plaintiff brought his vehicle to the Audi North Miami dealership, "Audi would make an exception and authorize repairs" even though "the condition was ordinarily not covered under warranty." [DE 82] at 5-6; *see also id.* at 8 (alleging Audi's authorized representative "made specific promises that the vehicle would be repaired at no cost"); [DE 85] at 5 ("Plaintiff alleges Audi promised a diagnostic-based repair determination and exception to ordinary warranty treatment.").  Plaintiff alleges that he relied on Audi's representations or promises, which induced him to deliver his vehicle to the Audi North Miami dealership.  *See* [DE 82] at 6-11.  He also alleges that Audi's promises induced him to forego "other options" or "other avenues of repair or relief."  *Id.* at 9, 10. However, Plaintiff's allegations in this regard are conclusory; he does not, for instance, identify any of the other options he allegedly decided to forego.  If anything, the allegations in Plaintiff's Fourth Amended Complaint as a whole suggest the amount in controversy is less than, or at least no more than, the amount in controversy would have been when CarMax was also a party.

---

[2] The Fourth Amended Complaint does not allege liability stemming from Plaintiff's initial purchase of the vehicle.

Based on the factual allegations included in the Fourth Amended Complaint, it appears to a legal certainty that – putting aside punitive damages for a moment – if Plaintiff were to prevail on his claims, he would be unable to recover anything above the amount needed to make the repairs listed in the exhibits to the Fourth Amended Complaint (i.e., the repairs Audi estimated it would cost $12,543.37 to complete).  And as noted on the record at the January 5, 2026 hearing and above, it is unlikely Plaintiff could recover damages for estimated repairs that he never paid to make.  *See Thomas*, 2022 WL 4091735, at \*3.  At any rate, it appears to a legal certainty that, based on Plaintiff's factual allegations, Plaintiff's best possible recovery would not be substantially more than $12,543.37 (plus punitive damages if available).

As to punitive damages, I reiterate that they are not available for Plaintiff's FDUTPA claim.  *See Thomas*, 2022 WL 4091735, at \*3.  Nor are they available for Plaintiff's promissory estoppel claim.  *See Yatak v. La Placita Grocery of Fort Pierce Corp.*, 383 So. 3d 497, 503 (Fla. 4th DCA 2024) ("Punitive damages are not recoverable in breach of contract actions. The counts for promissory estoppel and unjust enrichment are contract or 'quasi-contract' claims." (internal citations omitted)).  While punitive damages may be available if Plaintiff establishes fraud, Plaintiff's allegations seem to undermine any contention that punitive damages would be recoverable if he prevails on his claim for fraudulent and/or negligent misrepresentation in Count I of the Fourth Amended Complaint.  That is because Plaintiff alleges that Audi only decided not to comply with its representation or promise to perform the repairs after seeing the estimate.  *See* [DE 82] at 7 ("These statements were false and were made after Audi saw the estimate and decided not to pay for the repairs.").  While Plaintiff alleges in a conclusory manner that Audi never intended to honor the "diagnostic process," he then repeats his allegation that Audi reversed its position "after seeing the estimate."  *Id.* at 8; *see also* [DE 85] at 5 ("Defendant reversed course

11

after obtaining the diagnostic estimate.").  Plaintiff's allegations plainly undermine the potential availability of punitive damages.  *See Rogers v. Mitzi*, 584 So. 2d 1092, 1094 (Fla. 5th DCA 1991) ("We further recognize that the mere failure to perform a promise does not constitute fraud which would give rise to punitive damages, absent a specific purpose in the defendant not to perform the contract at the time it was entered. Negligent misrepresentation in this context will not support an award of punitive damages.").[3]  And even if punitive damages were available, any suggestion that they "could bridge the gap between" Plaintiff's other damages "and the $75,000 jurisdictional threshold remains 'indeterminate and speculative,' and therefore insufficient to preclude dismissal for lack of subject-matter jurisdiction." *Roberts/Heywood Prop.*, 2025 WL 1355824, at \*3.

Ultimately, for the reasons discussed above and at the January 5, 2026 hearing, it appears to a legal certainty that the amount in controversy is under $75,000.  Stated differently, accepting Plaintiff's factual allegations as true and viewing them in the light most favorable to Plaintiff, no reasonable jury *could* award Plaintiff more than $75,000.  Therefore, this Court lacks jurisdiction. As such, if Plaintiff wishes to pursue his claims, he must do so in state court.

---

[3] Notably, at the January 5, 2026 hearing, I made it clear to Plaintiff that fraud requires a false statement concerning a specific material fact, that a false statement of material fact must be about a past or existing fact, and that a mere promise not performed, without more, does not give rise to a fraud claim under Florida law. *See King v. Bencie*, 752 F. App'x 881, 883-84 (11th Cir. 2018) ("The false statement of material fact must generally go to a 'past or existing fact.' Forward-looking statements can constitute fraud only 'if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform.' . . . 'A mere promise not performed" [], without more, 'cannot form the basis of actionable fraud' under Florida law." (internal citations omitted)); *see also Prieto v. Smook, Inc.*, 97 So. 3d 916, 917-18 (Fla. 4th DCA 2012).  Despite a conclusory allegation to the contrary, Plaintiff has not alleged any misstatement about a past or existing fact.  The alleged false statement concerns a promise to repair in the future.  To the extent Plaintiff is attempting to allege that Audi never intended to perform, he does so in a conclusory fashion at best.  And as noted above, Plaintiff's allegations undercut any such allegation by alleging that Audi reversed course and decided not to pay for the repairs only *after* seeing the estimate.

For the foregoing reasons, it is **ORDERED and ADJUDGED** that the Motion [DE 84] is **GRANTED**, to the extent that this action is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.[4]  The Clerk shall **CLOSE** this case and deny any pending motions as moot.

      **DONE AND ORDERED** in Fort Lauderdale, Florida, this 19th day of May 2026.

Jared M. Strauss
United States Magistrate Judge

---

[4] *See McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309, 1313 (11th Cir. 2021) ("If subject-matter jurisdiction does not exist, dismissal must be without prejudice." (citation omitted)).